IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 25822-0-III |
| Respondent and | ) | (consolidated with |
| Cross Appellant, | ) | No. 26933-7-III) |
| | ) | |
| v. | ) | |
| | ) | |
| CLIFFORD MARK MEYERS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| In the Matter of the Personal Restraint | ) | |
| Petition of: | ) | UNPUBLISHED OPINION |
| | ) | |
| CLIFFORD M. MEYERS, | ) | |
| | ) | |
| Petitioner. | ) | |

SIDDOWAY, A.C.J. — Clifford Meyers appeals his conviction of first degree murder and unlawful possession of a firearm, assigning error to a claimed violation of his public trial right and to the trial court's oral instruction requiring the jury to reach a verdict on use of a firearm. In a personal restraint petition (PRP) that we consolidated with the direct appeal, Mr. Meyers challenges the sufficiency of the State's evidence to disprove his defense of self-defense.

Mr. Meyers's PRP is without merit. In his direct appeal, however, he demonstrates a violation of his public trial right which, being structural error, requires reversal. We dismiss the PRP, reverse the judgment and sentence, and remand for a new trial.

## FACTS AND PROCEDURAL BACKGROUND

Little need be said about the underlying facts. Mr. Meyers and others, traveling in several cars, were attempting to retrieve stolen property early one morning in June 2005. At a shop where they knew property was commonly fenced, they encountered Elijah Bishop, who had some of the stolen property in his possession. He admitted that he was the thief, returned the items he had in his possession, and agreed to lead Mr. Meyers and his acquaintances to where other items could be recovered. At a stop along the way, Mr. Meyers got out of a friend's car and into the truck being driven by Mr. Bishop.

While en route to where they would retrieve the property, Mr. Meyers shot Mr. Bishop in the right temple—"execution-style," according to the State. Report of Proceedings (RP) at 1118. The truck being driven by Mr. Bishop swerved and ran into a curb, and Mr. Meyers—gun in hand—jumped out of the truck and jumped into a car being driven by one of his friends. He told his friend that Mr. Bishop had called him a "punk." RP at 275. Mr. Meyers would later contend that Mr. Bishop pulled the gun on him and that it was only as the two struggled with the gun that it went off.

2

Before jury selection, a questionnaire was prepared for completion by potential jurors. It focused on pretrial publicity, the potential jurors' experience with homicide or other violent crime, and their ownership or possession of firearms. On the morning of the first day of trial, jurors were asked to complete the questionnaire while the court and the lawyers addressed pretrial matters. In addressing pretrial issues, the court proposed how to address any concerns raised by the potential jurors' answers to the questionnaire and the lawyers responded, as follows:

> [THE COURT:] Just for your information, any yes answers on the questionnaire, I would propose that we do those back in the jury room, individually. The defendant will have the opportunity, of course, to be present if he wishes. And that is because there is some sensitive nature and/or potential for contamination of the rest of the pool, so we will do that outside the public view.
> [PROSECUTOR]: Thank you, Your Honor.
> THE COURT: But on the record.
> [DEFENSE COUNSEL]: Thank you very much.
> [PROSECUTOR]: Thank you.

RP at 37-38. The bailiff, who had collected and reviewed the completed questionnaires, reported to the court that 24 jurors had answered "yes" to at least one of the questions.

The 24 potential jurors who had answered "yes" to a question were told to return to court following their lunch break. The afternoon session consisted of individual voir dire of the 24. The State does not dispute that the individual voir dire was conducted in the jury room, "outside the public view" as the court had proposed be done. Individual questioning resulted in 11 of the 24 potential jurors being excused for cause.

3

Mr. Meyers was found guilty as charged. Both parties appealed.[1]

In his opening brief filed in July 2007, Mr. Meyers assigned error to the trial court's conduct of a portion of jury selection in private and to the trial court's oral instruction requiring the jury to reach a verdict on use of a firearm. This court stayed his appeal pending decisions on petitions for review filed in *State v. Frawley*, 140 Wn. App. 713, 167 P.3d 593 (2007), *review granted*, 176 Wn.2d 1030, 299 P.3d 19 (2013), and *State v. Duckett*, 141 Wn. App. 797, 173 P.3d 948 (2007), *review denied*, 176 Wn.2d 1031 (2013). Mr. Meyers filed a PRP in March 2008 and we granted his motion to consolidate it with the appeal.

In December 2009, Mr. Meyers moved this court to lift the stay, pointing out that the Supreme Court had issued decisions in *State v. Strode*, 167 Wn.2d 222, 217 P.3d 310 (2009) and *State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009) addressing public trial issues akin to those raised in his own appeal. The motion to lift stay was initially denied because motions for reconsideration had been filed in *Strode* and *Momah*. We granted Mr. Meyers's motion to lift the stay when it was renewed in May 2013. Supplemental briefing was invited and oral argument of the appeal was heard in February 2014.

---

[1] The State challenged the trial court's finding, in sentencing Mr. Meyers, that the murder and unlawful possession of the firearm constituted the same criminal conduct.

4

## ANALYSIS

The state and federal constitutions guarantee a criminal defendant a right to a speedy public trial. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. The guarantee of a public trial requires that most aspects of a trial be conducted in the courtroom subject to public scrutiny. *State v. Love*, 176 Wn. App. 911, 916, 309 P.3d 1209, *petition for review filed*, No. 89619-4 (Wash. Dec. 9, 2013). It is well settled that the right to a public trial extends to jury selection. *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005) (citing *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804, 100 P.3d 291 (2004)). The process of selecting jurors is important "'not simply to the adversaries but to the criminal justice system.'" *Orange*, 152 Wn.2d at 804 (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 505, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)).

The right to a public trial is not absolute, but may be overcome to serve an overriding interest based on findings that closure is essential and narrowly tailored to preserve higher values. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012) (citing *Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)). One competing value is a defendant's right to trial by an "impartial jury," which is also guaranteed by article I, section 22 of the Washington Constitution. The "impartial jury" aspect of the constitutional guaranty "focuses on the defendant's right to have unbiased jurors," which is secured in significant part by juror questioning. *Momah*, 167 Wn.2d at 152.

5

Washington courts and the United States Supreme Court have developed an analytic framework for balancing the defendant's right to a public trial and other competing rights and interests, which, in the case of our state court, was articulated in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). In *Bone-Club*, the high court enumerated five criteria that a trial court must consider on the record before closing trial proceedings to the public.[2] If it decides to close proceedings after applying the criteria, the court should enter specific findings on the record to justify the closure. *Momah*, 167 Wn.2d at 149.

Mr. Meyers's contention that the trial court violated his public trial right by conducting individual questioning of jurors in private presents a question of law that we review de novo. *Sublett*, 176 Wn.2d at 70 (citing *Momah*, 167 Wn.2d at 147-48). A

---

[2] The criteria required to be considered are:
"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.
"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
"4. The court must weigh the competing interests of the proponent of closure and the public.
"5. The order must be no broader in its application or duration than necessary to serve its purpose."
*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

defendant may raise a public trial issue for the first time on appeal. *Brightman,* 155 Wn.2d at 516-17. An error in closing the courtroom is considered structural in nature in all but unusual cases, meaning that the error is not subject to harmlessness analysis. *State v. Wise,* 176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012).

In its supplemental briefing, the State argues that the facts of this case bring it within the "unique set of facts" that were found in *Momah* to constitute nonstructural error. *See Wise,* 176 Wn.2d at 14 (characterizing *Momah* as presenting unique facts). In *Momah,* the trial court—on the recommendation of the defendant's lawyer—questioned several jurors privately to protect the defendant's right to fair trial. *Momah,* 167 Wn.2d at 145-46. Due to the publicity of Momah's case, the defense and the trial court "had legitimate concerns about biased jurors or those with prior knowledge of Momah's case." *Id.* at 156. Momah not only agreed to private questioning of potential jurors but argued for the expansion of in-chambers questioning. Moreover, while the trial court in *Momah* did not explicitly consider the *Bone-Club* factors, it "effectively" did so. *Wise,* 176 Wn.2d at 14 (citing *Momah,* 167 Wn.2d at 151-52). "At bottom, *Momah* presented a unique confluence of facts: although the court erred in failing to comply with *Bone-Club,* the record made clear—without the need for a post hoc rationalization—that the defendant and public were aware of the rights at stake and that the court weighed those rights, with input from the defense, when considering the closure." *Id.* at 14-15.

7

This case does not share the characteristics that were critical to the result in

*Momah.* The State argues that Mr. Meyers actively participated in the design and

execution of the individual voir dire, but the State appears to refer to his participation in

preparing the questionnaire. When it comes to the procedure for nonpublic questioning

employed, the record reveals that the trial court proposed it and Mr. Meyers, through his

lawyer, agreed to it and took part in it. The defense was not the instigator of closed

questioning, there is nothing in the record to suggest that it expanded it, and the trial court

did not effectively consider the *Bone-Club* factors.

The error is structural and under *Bone-Club* and *Wise* we must reverse and remand

for a new trial.

In light of our reversal and remand we need not reach any other issue raised by the

parties other than Mr. Meyers's PRP, which asks us to reverse the judgment and sentence

with directions to dismiss the charges, arguing that the State presented insufficient

evidence to disprove his affirmative defense of self-defense. His argument amounts to

pointing to his own version of the circumstances resulting in Mr. Bishop's death and

asking us to believe his testimony rather than the evidence presented by the State. We

must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses,

and the persuasiveness of the evidence. *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81

(1985). Mr. Meyers fails to meet the burden of proof required to obtain relief from

personal restraint.

8

We dismiss Mr. Meyers's PRP, reverse the judgment and sentence, and remand for proceedings consistent with this opinion.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.

9